AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EM-
PLOYEES (AFSCME), AFL-CIO, Plaintiff-Appellee, v. THE COUNTY OF
COOK *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—88—0070

Opinion filed May 4, 1989.

JIGANTI, P.J., dissenting.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Susan Condon, Assistant State's Attorneys, of counsel), for appellants.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from the circuit court of Cook County denying the motion for judgment on the pleadings of defendants, the County of Cook and George W. Dunne as president of the board of commissioners of the County of Cook, and granting the motion for summary judgment of plaintiff, American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO. The sole issue presented for review is whether a government agency may elect, pursuant to its administrative authority under the Freedom of Information Act (Ill. Rev. Stat. 1985, ch. 116, par. 201 *et seq.*) (hereinafter the Act), to furnish requested information on a computer printout rather than on computer tape.

We reverse.

In October and November 1986, plaintiff requested the name, job title, position code, and rate of pay for employees in certain county departments. Defendants provided the requested information in a printed report, receipt of which was acknowledged by an agent of plaintiff.

In a letter dated November 2, 1986, plaintiff requested that the same information be provided on a computer tape or diskette. Defendants denied the request by letter dated December 1, 1986, because this information had previously been supplied.

On December 17 plaintiff's counsel wrote another letter to defendants, again requesting that the information be provided on computer tape. Plaintiff also requested that the information be sorted by job title within certain specified departments and to indicate whether the employees were covered by collective bargaining agreements. On December 31, defendants again denied the request and advised plaintiff that its payroll records were not maintained by job title within the requested specified departments nor do these records indicate which employees are covered by collective bargaining agreements. Defendants also stated that it was the requester's responsibility to re-sort the provided information.

On January 5, 1987, plaintiff appealed defendants' denial pursuant

to the Act. (Ill. Rev. Stat. 1985, ch. 116, par. 201 *et seq.*) Plaintiff, however, only appealed from defendants' denial of the request that the information be provided on computer tape or diskette. Defendants denied plaintiff's appeal by letter on February 11, 1987. Defendants maintain the Act does not require that the requested information also be provided on computer tape.

On March 5, 1987, plaintiff filed a suit for injunctive relief to require defendants to turn over the requested material on computer tape. During the pendency of the suit, plaintiff continued to ask for the information on computer tape and defendants continued to provide the information in a printed form. Defendants provided such information on four separate occasions after plaintiff had filed suit.

Plaintiff filed a motion for summary judgment on September 9, 1987. A supporting affidavit was filed with plaintiff's motion. The affidavit, from a part-time data processor, stated that the cost to plaintiff to convert the printed records onto disk would be $900, plus $100 for tape to disk conversion and for computer time. It was further stated that most of the cost could be avoided if the data were supplied in magnetic tape form.

In response to plaintiff's motion, defendants stated that it was the present practice to respond to such requests by providing a printed report; this was to ensure accuracy and consistency of material, and because the printout method was the most generally accessible format.

Defendants' response was supported by an affidavit from the director of the department of data processing, Joseph M. Yaeger. Mr. Yaeger stated that the requested information could be generated in either a printout or on computer tape. According to Yaeger, the choice of either would not affect the substance, type, or amount of information that could be made available.

Defendants then filed a motion for judgment on the pleadings. On December 7, 1987, the trial court, after hearing oral arguments from both parties, granted plaintiff's motion for summary judgment and denied defendants' motions for judgment on the pleadings.

The trial court's decision was based on a balancing test of convenience to the parties. The court found that providing the information on tape posed no great burden on defendants, whereas receipt of the information on tape was more convenient and less costly for plaintiff. It is from this order that defendants appeal.

■ It is well settled that decisions of the United States district courts and the circuit courts are not binding on Illinois courts. (*City of Chicago v. Groffman* (1977), 68 Ill. 2d 112, 118.) However, such deci-

sions may be adopted to the extent that we find the reasoning and rationale persuasive. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1057.) The question raised by defendants is one of first impression in Illinois. We view the district court's decision in *Dismukes v. Department of the Interior* (D.C. Cir. 1984), 603 F. Supp. 760, as dispositive of this issue.

In *Dismukes*, the plaintiff brought suit pursuant to the Federal Freedom of Information Act (5 U.S.C. §552 (1977)). The action was brought to obtain a copy of a computer tape which listed the names and addresses of participants in Federal bimonthly gas and oil lease lotteries. The defendant advised plaintiff that the requested information was available to the public on microfiche cards.

In *Dismukes*, defendant sought dismissal of the action on the grounds that its obligation had been discharged·under the Act when the information was offered to plaintiff on microfiche. In plaintiff's cross-motion for summary judgment, he contended that his specific request pursuant to the Act had not been satisfied. The issue presented to the court was whether a Freedom of Information Act requester may specify the format of the data that he seeks from the agency. *Dismukes*, 603 F. Supp. at 760.

The court held that the agency had no obligation under the Act to accommodate plaintiff's preference. "The agency need only provide responsive, nonexempt information in a reasonably accessible form, and its offer to plaintiff satisfies that obligation." (*Dismukes*, 603 F. Supp. at 763.) The fact that the computer tape offered the least expensive and most convenient means of access to the lottery information did not obligate the agency to provide the plaintiff with a computer tape under the Act. *Dismukes*, 603 F. Supp. at 763.

Similarly, we find that the information provided to plaintiff in the instant case satisfies defendants' obligation under the Illinois Act. Here, there was no refusal to provide the requested information. The only question was the format in which the information was to be furnished.

The legislative intent of the Act is to provide the public with access to nonexempt information. (Ill. Rev. Stat. 1985, ch. 116, par. 201.) The only obligation that the Act imposes with respect to form is that "public records stored by means of electronic data processing may be obtained in a form comprehensible to persons lacking knowledge of computer language or printout format." Ill. Rev. Stat. 1985, ch. 116, par. 205.

We find the standard announced in *Dismukes* is more in accordance with the purposes of the Act than the balancing test adopted

by the trial court. Accessibility of information, not convenience of format to the parties, is the focal point of the Act. Under the *Dismukes* standard, the agency need only provide responsive, nonexempt information in a reasonably accessible form.

It is not disputed that defendants in the instant case provided plaintiff with the requested nonexempt information. A printout is a reasonably accessible form that is comprehensible to the public. The requester does not have a right under the Act to designate the format as well as the content. (*Dismukes*, 603 F. Supp. at 763.) The agency, however, does not have unfettered discretion to choose the format. We find that the information must be presented in a format within the guidelines as set forth in *Dismukes*.

Plaintiff maintains that *Dismukes* is contrary to the weight of authority under Federal and State freedom of information acts mandating disclosure of documents. Plaintiff cites three out-of-State cases in which, he contends, the requester could designate the format. We do not find that these cases support plaintiff's proposition.

The first case plaintiff cites is *Lorain County Title Co. v. Essex* (1976), 53 Ohio App. 2d 274, 373 N.E.2d 1261. In *Lorain*, the court of appeals of Ohio held that where information contained in a public record is placed on microfilm, the microfilm becomes a public record to which the public has reasonable access. (*Lorain*, 53 Ohio App. 2d at 276-77, 373 N.E.2d at 1263.) However, the court also pointed out that the format by which the agency makes the information available is within the agency's discretion. *Lorain*, 53 Ohio App. 2d at 277, 373 N.E.2d at 1263.

Similarly, in the instant case, defendants are not preventing plaintiff from access to the requested information. Defendants are merely exercising their discretion in choosing the format by which the information is to be provided to plaintiff. Plaintiff's case actually supports defendants' position.

Plaintiff next cites *Menge v. City of Manchester* (1973), 113 N.H. 533, 311 A.2d 116. In this 1973 case, the supreme court of New Hampshire held that real estate assessments were public records pursuant to the State's "right to know" laws. The court found that, in view of the ease of obtaining the information from computerized tapes as opposed to 35,000 field cards, plaintiff was entitled to a copy of the tape. *Menge*, 113 N.H. at 538, 311 A.2d at 119.

In 1986, however, New Hampshire's "right to know" law was amended to give public bodies the right to choose to provide the requester a printout of computer records as opposed to the original documents. (N.H. Rev. Stat. Ann. §91—A:4(V) (1986).) In effect, the

amended law gives the agency the right to choose the format.

The last case plaintiff cites is *Ortiz v. Jaramillo* (1971), 82 N.M. 445, 483 P.2d 500. In *Ortiz*, the supreme court of New Mexico held that the county chairman of a political party was entitled to a copy of a magnetic tape of voter registration affidavits of the entire county as opposed to requiring the official to personally inspect the affidavits.

The court found that, although the right to inspect public records includes the right to make copies thereof, these rights are subject to reasonable restrictions. (*Ortiz*, 82 N.M. at 446, 483 P.2d at 501.) *Ortiz* does not stand for the proposition that the requester has the absolute right to choose whichever format is most convenient to his individual needs. Reasonable regulations may be imposed so long as there is reasonable access to the nonexempt information. We do not find the holding in *Ortiz* contrary to the holding in *Dismukes*.

We will not address defendants' contention that a *de novo* review was inappropriate pursuant to section 11(e) of the Act (Ill. Rev. Stat. 1985, ch. 116, par. 211(e)), as plaintiff was not denied access to the information. Defendants only denied plaintiff's request to provide the information on computer tape.

■ We find that the *Dismukes* test is more in accordance with the purposes of the Act as opposed to the balancing test adopted by the trial court. We further find that there was not an abuse of discretion by defendants in providing the plaintiff with a printout of the requested information rather than a computer tape. Defendants were within the guidelines as set forth in *Dismukes*.

For the foregoing reasons, the orders of the circuit court of Cook County are reversed.

Reversed.

LINN, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

I respectfully dissent from the opinion of the majority because I believe that the trial court acted properly in balancing the convenience of the plaintiff against the burden imposed upon the agency in determining whether the agency was required to furnish the requested information in the form of computer tape rather than computer printout.

The agency maintains the requested information on computer tape. The information can be reproduced in two ways—either by making a copy of the computer tape or by making a computer printout of

the information contained on the tape. The plaintiff requested a copy of the tape because the copy could be used directly in the plaintiff's computer, thereby making the information more accessible in that form. By contrast, it would cost the plaintiff approximately $900 to transfer the information from the computer printout into the plaintiff's computer.

, The agency maintains that it may choose the format, regardless of any inconvenience to the plaintiff, as long as the information is in a readily accessible form. It cites *Dismukes v. Department of the Interior* (D.C. Cir. 1984), 603 F. Supp. 760, as support for this contention. The *Dismukes* case does state that in order to comply with the Freedom of Information Act (FOIA), the agency need only provide responsive, nonexempt information in a reasonably accessible form. However, a close reading of the case reveals that the court did in fact consider the cost differential between microfiche and computer tape in determining whether the agency was erecting unreasonable barriers to the plaintiff's access to the information. The court found the differential minimal and concluded that the agency was not erecting an unreasonable barrier to the plaintiff's access.

The plaintiff has cited two cases from other jurisdictions and an Illinois Attorney General opinion which support its position. In *Ortiz v. Jaramillo* (1971), 82 N.M. 445, 483 P.2d 500, the court held that the plaintiff had a right to copy a magnetic tape containing voter registration affidavits rather than having to inspect the individual affidavits. In so concluding, the court stated that "[w]e are unable to understand why the right to inspect public records should not carry with it the benefits arising from improved methods and techniques of recording and utilizing the information contained in these records, so long as proper safeguards are exercised as to their use, inspection and safety." (*Jaramillo*, 82 N.M. at 446, 483 P.2d at 501.) In *Menge v. City of Manchester* (1973), 113 N.H. 533, 311 A.2d 116, the court held that the plaintiff was entitled to a copy of computer tapes of certain real estate assessments rather than having to gather the information directly from the field cards. The court stated that "[t]he ease and minimal cost of the tape reproduction as compared to the expense and labor involved in abstracting the information from the field cards are a common sense argument in favor of the former." (*Menge*, 113 N.H. at 538, 311 A.2d at 119.) In Attorney General opinion No. S—1323, dealing with computer tapes containing voter registration records, the Attorney General stated that "[w]hen the county clerk keeps the voter registration records on computer tapes, it makes no sense and accomplishes no legitimate purpose to force individuals and organiza-

tions to copy the information from the registration cards rather than from the tape. \*\*\* Therefore, as a general rule, interested individuals and organizations may copy computer tapes containing voter registration records." 1977 Ill. Att'y Gen. Op. 219, 221-22 (No. S—1323).

The majority attempts to distinguish these authorities on the basis that the format chosen by the agency in each of those cases was "clearly" unreasonable because it imposed a great inconvenience upon the party requesting the information. I believe that a determination as to what constitutes reasonable access should involve a consideration of all of the factors present in the case, including the factor of whether the agency would be burdened in any manner by granting the plaintiff's request as to format.

In the case at bar, the agency advanced two reasons for furnishing the information in the form of a computer printout rather than a copy of the computer tape. First, it claimed that a computer printout would better ensure accuracy. However, at a hearing on the plaintiff's motion for summary judgment, it was established that the computer printout would be no more accurate than a copy of the tape from which the printout was produced. Second, the agency maintained that a computer printout would be more accessible to the general public. However, no explanation was given as to why the information could not be released in different formats to different requesters. Finding that the agency had no reason whatsoever to choose one format over the other, the court determined that the agency's choice of format was entirely arbitrary. Balancing the agency's complete lack of interest in choosing one format over the other against the considerable cost differential faced by the plaintiff, the court determined that the plaintiff was entitled to a copy of the computer tape. I believe that the court's decision was compatible with the purpose of the Freedom of Information Act to ensure full and complete access to public records.